Your Honors, Katherine Smith. May it please the Court, I represent Northwest Technical Resources and Barbara Finch, the appellants in this matter. This is an appeal from a summary judgment dismissing contract and tort claims. I'd like to try to keep seven minutes for rebuttal if possible. These claims arise from the appellee Bechtel's demand for cost repricing data which was not entitled in negotiation of an extension of a subcontract for commercial items that were used in the Hanford project. I'd then use that information in order to hire away employees that were used through Kelley Services once the contract was not in fact extended. The summary judgment in this case is essentially premised on the legality of the demand for the information that Bechtel used. But the demand must be considered illegal and a breach of contract on summary judgment because the information that was being requested was cost repricing data for a commercial item. Now the evidence on summary judgment that this was in fact a commercial item is Northwest Technical provided through a subcontract essentially budgeting engineers for the Hanford project on a temporary basis. The standard for commercial item is that the information be offered and sold competitively in substantial quantities in the commercial marketplace based on established catalog or market prices for specific tasks performed and under standard commercial terms and conditions. Now Bechtel has represented in their brief that in fact there is an exception for hourly rates. They say there's an exception for hourly services and specialized services. There is not an exception for hourly services and in fact they do not, after making that claim at the beginning of the brief, do not recite it again. Well, we're on summary judgment. What's the record show? The record shows this about what the nature of these services were. The subcontract that these parties were negotiating an extension for described the services as standard commercial services. That was how the parties had characterized this in their earlier contracts. The job descriptions in the subcontracts are established as individual, if you just look at the job descriptions, it's things that people do in budgeting, engineers do in budgeting in the marketplace. And in fact it's, for instance, some of the things that are required is that the person be proficient in WordPerfect or other types of items like that. Employees from these jobs went into jobs in private industry from these jobs. And I think perhaps the most telling evidence on summary judgment was once this contract was terminated, it was not extended, where did Bechtel go to get these services provided? It went to Kelly Services, where many of these same employees went. But they got those services through Kelly Services under the standard commercial contract that already existed under which Kelly Service was providing these sorts of services, and in which Kelly Services warranted the work, that the work would be done as in the industry. Who makes the determination whether it's a commercial item? Doesn't Bechtel under the contract make that determination? It makes the determination as an initial matter, there's a specific provision, unless the court finds, unless the court finds, court of competent jurisdiction, which the trial court was and which this court is, that there was substantial evidence that the services were not as represented by Bechtel. And in fact Bechtel had made, for instance What's the standard of our review in determining Bechtel's determination that these were not commercial items? I believe this is a mixed question of law and fact. Mixed question of law and fact? Yes. And we've cited in our reply brief, in the footnote on page eight, that there are two non-district or federal circuit court cases that state that interpretation of the application to these facts is a question of fact, in my view. And we have, I've recited to you the evidence and it's submitted in our briefs. What was in the evidence? Why? I'm sorry. Excuse me. Because you've hit exactly where my problem was. I was trying to struggle in the record to find out what was so standard about, say, someone who knows WordPerfect. It's not like buying a refrigerator of 13.5 cubic feet in a catalog. So was there something in the record that showed that these jobs were cataloged by type, description, duties, and pricing? They were, yes. The contract itself has six categories and four subcategories of hourly rates by which these individuals, and Judge Bonetti, it's also, it's not just commercial. Commercial items include services. And that's quite clear. We've cited cases in both the province, in fact, included in commercial items. It's not just commercial goods that are included. Can we go back, though, to the standard of if Bechtel, if it's within Bechtel's province to make the determination, and if their determination falls within a reasonable range of possibilities given the FAR structure, how, what would be the basis for overturning that on appeal? Bechtel had made the determination between these parties that these were commercial items. It had done so in their contract. And when it was negotiated the word commercial items, it says it expressly defined this in the contract itself as commercial as a, as standard commercial services. It had justified this contract in 1998 based on a market survey. Now, in 1999, the DOE came in and did a review. And it did a review of Bechtel's, not of Bechtel's allegations with regard to cost or pricing data, which is what they were demanding under these circumstances. It criticized Bechtel's cost-price analysis. And Bechtel Because that was based on the market. It did not say that it could not base that on the market. That, now, Bechtel has represented that what they said is you've got to get cost or pricing data. And, in fact, DOE didn't do that at all. It did not demand cost or pricing data. And, in fact, at North, at our supplemental excerpts of Record 3, it expressly acknowledged that you should not obtain cost or pricing data unnecessarily. Now, the question in this case is That last word, unnecessarily, is one of these big loopholes in government contracting, isn't it? But the allegation that Bechtel has made that DOE was demanding that it get cost or pricing data for this subcontract is simply not true. Well, was this a sole source contract? It was a, it had been bid, it had been done as a sole source contract in the past, yes. Okay. Now, does that mean that under the DOE regulations and the requirements of law, that Bechtel did not have to get cost and pricing data in order to back up the sole source contract? If it was for a commercial item, it was prohibited from doing Oh, no. Well, we'll get back to the commercial item. Well, the commercial item exception applies without regard to the other types of Exactly. Assuming that this is not a commercial item, did they have to get cost and price data in order to comply with the DOE requests? Well, the issue is, in fact, whether this was a commercial item, because that is the exception that's being relied upon. That's fine if you want to stick with that, but maybe somebody mis-briefed this, or I misread the brief, so I must have a reading as well as a hearing problem, because I thought what the brief said was, is this all came crashing down because in 1998, DOE does a review of Bechtel, and said, in 1999, it says, your 1998 does not comply with our regulations, we've got to have cost and price data for these contracts. The contract is about to expire, so it's a question about extending the contract, sole source contract, so Bechtel says, look, during the negotiations, we need data, cost and pricing data, which was given to Mr. Craven, okay? Also during the negotiations, as I understand the briefs, if I'm not wrong, reading it, they said, if you want to, do it to a third party, give them that, but we've got to satisfy DOE. Now, that's either, I don't know what that has to do with the commercial item, if that's out of the picture. If we don't consider that, if you say the case is over on commercial item, you want to leave your argument there, that's fine, but the briefs didn't argue only commercial item. Your Honor, the question was, what, DOE was not satisfied with Bechtel's cost price analysis. Bechtel has represented that as a result of that, they were obligated to get cost or pricing data. Our argument is that cost price analysis is not the same as cost or pricing data, and that cost price analysis might have meant under these circumstances that Bechtel was obligated to do a better market analysis, that it should have gotten information from other places, but that because this was a commercial item, it could not demand from Northwest Technical cost or pricing data. See, I'm going to have to go back and re-read. It seems you're mixing about three things together. First of all, commercial item is mixed with sole source contract, cost and pricing analysis is mixed with cost and price data, and it sounds like it's all bundled up into one, so I don't quite follow you, because I can understand your argument on commercial item, that's easy. Either it is or it isn't. If it is a commercial item, or if there's some question as to whether it is a commercial item, Bechtel could not demand cost or pricing data from Northwest Technical. And you were right, the cost price analysis and cost or pricing data has been bundled up by Bechtel, but has been done improperly. The exception for commercial items applies regardless of the nature of the contract. You cannot obtain cost or pricing data. That doesn't mean you can't do cost price analysis, but you cannot demand cost or pricing data in order to do it from the individual that you were doing the contracting with. And that's the exception that applies with regard to commercial items, regardless of the nature of the contract. When they requested that information, and Bechtel had taken the position in this contract that this was a commercial item. Having taken that position, there is at least a question of fact as to whether it was appropriate under these circumstances for them to demand this information. And I want to make quite clear that DOE did not say to Bechtel, you must obtain cost or pricing data from Northwest Technical. This was a review of Bechtel's contract, a criticism of their cost pricing analysis, but they simply did not demand that this information be obtained from Northwest Technical or any of Bechtel's other subcontracts. Now, it is true Mr. Craven asked for this information and represented, the record on summary judgment shows, that it was not going to be provided to anyone who didn't need to see it, that he was going to use this to help Northwest Technical establish its basis for an extension of this contract. And the other portion of this claim, the tort portions of this claim are directed to the fact that Mr. Craven did not keep his word, that he took information to which he was not entitled and misused it. And what are the facts supporting his misuse? The information was used to do what essentially was an illegal audit. The contract had the provision under which an audit could be done, and they were not, and there was no suggestion in this case that Bechtel was saying that it was going to do an audit under these contracts. Now, his misuse of the information in particular was he purported to determine what profit was being obtained on this contract, presuming that it was a cost-plus contract, in fact, when, in fact, it wasn't. He confounded and confused, and in doing that, he miscalculated because he was not taking into account the case. Kagan. That seems like a stupid misunderstanding, perhaps, of the law, but it doesn't seem to be a violation of proprietary rights, as I understand. Well, if it's too much. I mean, in other words, if you give something to me and I say, look, I'm not going to use it and disclose it outside, and then I have it and I misunderstand something and I say, well, I see this data and I see that data and I now have a conclusion and I'm just flat wrong, I haven't misused your proprietary data. You've misused it if that has been the basis for continuing to insist on information that you're not entitled to and refusing to extend the contract. And the parties had an obligation in this case to negotiate in good faith. There was no obligation to extend the contract, but if they were going to, they needed to negotiate in good faith. And the misuse of this data prevented that from happening. On summary judgment. Are you saying it's a good faith standard of review we're looking at with regard to this issue? Well, the question is. A good faith of Bechtel? Bechtel had an obligation. Bechtel took position they were going to attempt to extend this contract and provided notification of extension of this contract in which they had characterized this for commercial services. Having done so under Washington law, they were obligated to negotiate in good faith. And if they got information and misused it and misrepresented what they were going to use it for, then there is a question of fact as to whether they did this under Washington law. So I was just quickly reviewing the district judge's decision on summary judgment. And when it came to this issue early on, he indicates that the court had not seen evidence adequate to indicate the information was improperly obtained or that the defendant had a duty to confront DOE on the matter. The evidence before the court suggests plaintiffs voluntarily disclosed the information and nothing prohibited the plaintiffs from addressing the DOE themselves. So you must be basing it then, the district judge, that there was a disputed issue of fact and the district judge was erroneous in that. I'm sorry, Your Honor. I'm sorry. I'm mumbling. You must be saying that the district court, when addressing the factual basis for disclosure of this information, was then clearly erroneous in what he said, or there was a disputed – it's not clearly erroneous. It was a disputed issue of fact and he should not have granted summary judgment. Either this – either these were commercial items and he was not – they were not entitled to this as a matter of law or there was a dispute, factual dispute, as to whether it could be considered a commercial item given the contracting history of this set of parties that should have prevented summary judgment. One of the difficulties, I think, for the district court and for us is the wide-ranging nature of the evidence presented. And there wasn't a list of disputed material facts that the district court had, was there? Well, in fact, there was. I mean, I looked in all those documents and I can't see they can be characterized as that. In response to Local Rule 56.1, the plaintiffs in this case set out their set of facts and there were disputes about what information was requested, when it was requested, and the appropriateness of the request. And then there was a cross-reference declaration where Mrs. French testified to the information that was in the statements of facts. Now, Bechtel, in their reply, provided – purported to provide a matrix in which they argued that the disputed facts were, in fact, not disputed because there was insufficient foundation for the allegations of facts. But, in fact, Mrs. French did testify to those facts in the statement of fact. She basically said, these are all true. Well, she didn't say these are all true. What she did was she specifically recited the statements, and they were all statements about negotiations that she had had with Bechtel. She personally had had in meetings with Bechtel employees that those statements were true. Well, I'm with Judge McKeon. I think it's because of the wide-ranging issues of fact. Because I get confused between the fact – whether it's a disputed issue of fact that this information was furnished under a confidentiality, and then it was released to Kelly Services, and whether that's an issue. That is an issue. Okay. Or whether or not there was no question of fact about voluntarily giving them and how it was used, and whether that – and whether or not it was cost-pricing analysis or cost-pricing. And the district judge wasn't that specific. So I didn't mean to be implying anything when I was questioning. I just have a hard time with all these facts. And it sounds like what you're saying is a disputed issue of fact. There was a dispute as to whether it was voluntary. There was a dispute as to whether it was appropriate to provide the information to Kelly Services. There is a dispute that we believe is a factual dispute with regard to whether this was a commercial item. If, in fact, it wasn't a commercial – Let me ask you about this. You weren't the trial counsel, so that's always a good situation in case we have questions about what might have happened in the trial court. But I'm looking at a document called Plaintiff Northwest Technical Services Statement of Facts in Opposition. Yes. Is that what you consider to be the statement of disputed facts? Yes. Okay. Well, let me stop there. I'll tell you my problem with that thing, okay? And I can see where the district judge at this point might be getting grayer hair or tearing it out. This thing is like 75 pages long. And if these are disputed facts, I don't know how the district court is supposed to figure it out. Here, for example, it says, I don't think anybody disagrees with that. I assume Bechdel doesn't because that's where it gets a lot of its money. And so, I mean, we just go on page after page after page. These are facts, but trying to figure out what's disputed and not disputed, I just had trouble, to be honest, using this document for almost anything. And that's what I think the district court was also saying. How is he supposed to hunt and peck and figure out what's disputed when he's got, you know, a list of 100 or more facts, some of which isn't disputed? The reservation is being cleaned up, that they had a contract, and, you know, it goes on and on. So I guess is there some other place we should look in the record for a little package of disputed facts? My time's going up right now, but yes. This is the facts as were set out by the plaintiff. At the conclusion of this document, and I will agree with you, it's a long document. But the question that was before the district court was whether, given the facts as set out by the plaintiff, there was a dispute regarding the voluntariness of the information, whether it could be appropriately garnered, and the use that was made to it when these contract negotiations fell apart. And that was clear from the facts as that were established. Now, there was an argument made that, in fact, there was no foundation for these facts, based on the fact that rather than have another 75-page document from Mrs. French after setting out all these facts again, she filed a two-page declaration acknowledging her knowledge of the facts to which she had personal knowledge. But the district judge, I think, pinpointed what our problem is. The plaintiffs provide general citation of Declaration of Barbara French to support their claim that defendants demand or surreptitiously obtain access to cost data without legal basis. The Declaration of Barbara French and North do not provide sufficient authentication of the documents, et cetera. I think what the judge was saying, and this may be wrong, I mean, you may argue that, I'm not going to go through this, I can't figure out what you're talking about. You've given me all these declarations, you've given me all these depositions or whatever, but you haven't pinpointed anything. And that's why I had a problem tracking that and tracking the dispute. Our briefs expressly state the statements, the particular statements of fact within the plaintiff's statement of fact that show the disputes and cross-reference to the cross-reference declaration that says I'm affirming this as a fact. They are all facts that were within Mrs. French's direct knowledge because they were as a result of negotiations with Bethel. And Northwest Technical and Mrs. French should not be faulted for following the local rules assessment or rule about how they were supposed to do this. They were supposed to set out their facts and do so in this type of document. Now, it's true that it does include a lot of information, but it cross-references every paragraph, to an exhibit or an affidavit that says I know this as a fact, and it's clear that, in fact, they are items that would be within the personal knowledge of the individual who's testifying to them. Thank you. Thank you. Well, you have a lot of questions to answer, so come on up. Good morning. My name is Jim Wagner from Stafford, Frank Cooper, and I represent Bethel. Let me just say, if I can, before I start getting hit with questions, that I think that this case is actually a very simple case. The appellant wants to suggest that this is some complex issue of federal acquisition law. In fact, this appeal is really two simple things. One, the most fundamental issue of summary judgment, which is that when a moving party files a motion for summary judgment, the responding party is obligated to do something more than make general allegations and is required to come forward with specific factual evidence material to the issues in question. The judge struggled with that, and in various places in his opinion says, you've given me this whole document. You haven't pinpointed. Now, is that sufficient to say that there was no disputative issue? Well, I think the judge suggests that it is and cites some support for that. But beyond that, both below and in our briefing here and as I stand before you today, I am prepared to demonstrate claim by ‑‑ claim by claim all the junk that they threw out in that 79-page cross-referenced pile did not create any material, genuine issue of material fact as to the specific claims being made. And that's what matters. I think that counsel pinpointed one that is an obvious one, and that is depending on the legal resolution of whether this is a commercial services contract and whether data can be supplied. Because if it were determined that they're not required to supply data under that contract, then as she points out, there may well be an issue of fact as to whether the supply of data was voluntary. And that's certainly something that Ms. French was in a personal position to comment on. Well, in fact, there's nothing in her declaration that says she didn't supply the material voluntarily. In fact, in their statement of facts on the ER 216, they simply state that Mr. Craven was provided with access to confidential financial records. He asked for it and he was given it. Now, there may be an issue. There could theoretically be a misrepresentation claim or something like that. But the issue of whether or not the material was provided voluntarily, there's no factual statement anywhere by Mrs. French saying I didn't want to give them this information and I was forced to do so. But I really don't think that issue is material to anything, Your Honor, because if I may ---- Can we start at the top in terms of the contract? Yes, exactly. The contract. Can we start at the top instead of in the middle for just a second? This was fundamentally a breach of contract case. Now, granted, there are short claims that I'm prepared to address. But the basic issue was whether or not Bechtel breached the contract. And this issue, this house of cards that has been created with respect to the commercial item exception has no foundation to sit on, because the fundamental reason why Northwest Technical Resources has no breach of contract claim here is that Bechtel had no obligation whatsoever to extend this contract. They had the right under Special Condition 20, but no obligation to do so. They indicated a desire to do so. They indicated the framework through which they would pursue negotiations to do so. But that did not confer on NTR any right or expectancy with respect to that extension. In fact, the contract ---- But under your contract and under Washington law, you have to do that in good faith, though. Is that right? You have to negotiate in good faith. Yes. Yes, towards a contract. But, again, since Bechtel had no obligation to extend the contract under any circumstances, I submit, Your Honor, that at the end of the day, Bechtel could simply have come to Northwest Technical Resources after all these negotiations and said, we have elected not to extend the contract. But that ---- And given no obligation whatsoever ---- That wouldn't be a viable principle. You would never have any claim for violation of the duty of negotiating in good faith. Well ---- If they weren't ---- if they used the data improperly, I'm just saying if, and if they used it to then they might have violated the duty of good faith. But there are several ifs. There are many ifs there. But I still submit, Your Honor, that while I disagree that any of that happened, the difference between the cases that talk about violation of the duty of good faith and fair dealing in negotiations are because they are with respect to negotiation of price with respect to items that are unquestionably covered by an existing contract, such as a change order or the price of a specific item that's already been agreed to be purchased. I understand that. If I haven't misread a lot of this, it seems to me what's being said here is, by the appellant, you can answer any way you want to, that you weren't entitled to whatever you want to label it, cost and price information or cost and price data. That once you got it, the game was, and there was a conspiracy charge, that you used that cost and price data to slip their employees out from under them. And the reason for that was, is apparently these employees have been integrated in your system so long that you needed to use them. I don't even know if this is in the record, by the way, but, I mean, this is the argument. So tell me what's wrong with that. In other words, the fact that in your negotiations, even though you didn't have to extend the contract, you got the cost and price data, you then used that with Kelly in order to slip the employees out from under, because you can stop the contract, but the employees walk. So in other words, that would be a tort claim, it would seem to me, not a contract claim, that we either tortiously interfered with their business expectancy with respect to the continued services of their employees or we engaged in a civil conspiracy. What's even more complicated, they terminated the employees before anything really happened. So that was where I was going with this, but I think to respond to your premise, which I grant you. I'm just saying I think that's what I'm reading in the brief. I'm not saying it's my premise. I understand that, and I do think that's what their briefing suggests. And I think that those points are germane to potential tort claims as opposed to contract claims. And my point initially was there are two sets of claims here, tort and contract. And I was addressing the contract claims. I think there's no foundation for a contract claim because there was no right to expect an extension. And I can address the issue of the commercial item, but to respond specifically on this issue, with regard to it's ironic that this civil conspiracy claim is in the case and this tortious interference because the record undisputably is 180 degrees opposite of what the allegations are. The allegation and the theme of the case suggests that Bechtel had this grand conspiracy to get rid of NTR and steal all its employees. The record is undisputed, and it is conceded in all the briefing, both below and here, that Bechtel wanted NTR to stay on the job, and we were trying to keep them as the contractor. And the hangup was in getting the contract extension to a point where it would pass DOE's muster. And underneath that was the question of whether or not you could ask for and require them to raise costs in pricing data. And that gets back to the contract issue. That gets back to the contract issue. But if I can just finish the focus on the tort claims for a moment, and they do kind of get mishmashed and gobbled up and gone back and forth, but if there was this attempt to tortuously interfere with, well, let's back up. Tortious interference with a contract expectancy has got these five elements. There has to be the existence of a business expectancy, defendant's knowledge of it, an actual act of interference by improper means or purpose, and then resulting damages. And there's problems as a matter of law on this record with at least three of these elements. Let me tell you on the one that gives me pause, and that is Bechtel's position that simply because the contract was terminated and these employees were terminated, that that somehow made the non-competition agreement go poof. Because the non-competition agreement survives the employee's specific employment with NTR, and they have a non-competition agreement for a year. And NTR is not just uncompetent. They have a non-competition agreement for 90 days, Your Honor. Excuse me, 90 days. That's the way they say a year. And there's no evidence that Bechtel. Do you want me to finish my question or do you want to argue with me? I don't. I don't want to do either. I want to do the first, not the latter. Okay. But they're not supposed to compete with the company, which is NTR, after they leave for the period of the non-competition. And the company provides these kind of services not just for Bechtel but for others. And there's no evidence that the company was out of business as of that date when the employees walked across the street. If I may say, if you look at the record, and particularly ER-201, which is the actual document by which NTR elected to lay off all its employees, they say they're doing so specifically because they don't have any other work. Correct. And there's nothing in the record to suggest that there was other work for these employees to go to. And, in fact, they didn't have any other work. But that begs the question of whether the non-competition agreement still has validity. Well, there's no case law, and there's none cited by NTR for the proposition that the non-compete agreement is enforceable against some third party who did not hire these people. Bechtel didn't hire these people. They went to work for Kelly. And Bechtel didn't have anything to do with them going to Kelly other than to tell them that Bechtel was going to use Kelly because NTR had elected to walk off the job. Well, but there's another sub-issue then, because the district judge found that there was no disputed issue of fact and no evidence that Bechtel provided Kelly with the cost price data, if that's a term of art. But that ties into something you just said with regard to this non-competition agreement. It seems to me what happened, and help me on the record on this disputed issue of fact or not, tell me, the negotiations are not going well. But unless you get into a bad faith situation, they're button heads. They're just not making any headway. It seems as though NTR pulled the plug. First of all, it gave a final offer, take it or leave it, and then it pulled the plug by firing all its employees. I mean, Bechtel's hanging in there saying give the cost data, if this is not a disputed issue of fact, give the cost data to DOE, we don't care. But it was NTR that pulled the plug. First, with the drop-dead offer, and secondly, it terminated employees. Now Bechtel's hanging loose with nothing and trying to negotiate into a vacuum at that point. And we were under contractual constraints with DOE to prosecute the work. Now, there happens to be an existing contract with Kelly Services with another affiliate of Bechtel out there that we tumbled into the day that Kelly or I'm sorry, the day that NTR terminated this thing. Well, apparently the Kelly Services, if the record again isn't in dispute, is that Kelly Services' national contract with Bechtel would not only cover Washington but all over. That's correct. So if you're in trouble, you go to Kelly and say, hey, we need some people. Right. And it was only a stopgap until we could re-procure, because Bechtel or DOE was never going to allow Bechtel to proceed in that manner on a long-term basis. So actually we went into a re-procurement. But there's no evidence on Kelly. There's no evidence, as I read it, on some arrangement between Kelly and Bechtel to say, let's not continue this contract and then we can sneak these employees over here and then hire them through the back door. There's no evidence in the record at all, Your Honor, that there were any communications between Bechtel and Kelly before NTR pulled the plug, as Judge Bernetti put it. Yeah. And may I just elaborate on that one moment to point out, not only did Bechtel want this to continue and not only did Bechtel say you can deal directly with DOE on this cost pricing data issue and we'll just hold our hands up, but we even agreed to offer, we extended formally a proposal to NTR for an extension of the contract until September, a six-month extension at the rates they demanded. You kept saying that, but again, if I'm not wrong, that's why I want to make sure, it was NTR that pulled the plug. Correct. With the drop dead and canceling the employees. Because once you terminated the employees, it caused the vacuum. That's correct. Now, I assume that underneath that all is that NTR would assume that Bechtel was in big hurt because you had these people integrated and once they canceled that you would crumble, and you didn't crumble, right? I think the irony here is that the suggestion in the lawsuit is that Bechtel was leveraging this little company when in fact what was happening in the negotiations is NTR was attempting to leverage, to put Bechtel between a rock and a hard place by withholding the services of the employees while still Bechtel was under contract. How many employees were involved? Somewhere between a dozen and 20, as I recall. Could you go back to the contract? Yes. And where we started, Ms. Smith, and that has to do with the commercial. Your brief basically says that there's an exception here for hourly services and specialized services. So where in the record is the basis for that and what's the standard of review? If our brief says that, then that's a misstatement because that is not what we say. What we say is that there is no, there was no exception for these particular services. We don't dispute that services can be, can be a commercial item. And the bid protest cases that were cited by NTR are examples of cases where a contracting officer's determination that some service, pre-trimming services. Well, that's not the issue. It's not a question of services. The question is whether these services. Right. These, the issue is whether the particular services being provided by NTR under this contract qualified under the commercial item exception. And Bechtel had made a determination at DOE's prompting in 2000 that these were not commercial services. And we told NTR in the February, in the January 2000 request for proposal that they would have to, they would have to demonstrate that an exception applies before we would consider them to be anything other than a, not a commercial item. Okay. So this is in the RFQ or whatever that Bechtel sends out in January 2000? Yes. It was in the letter that we, we sent that letter to NTR in January 2000 telling them we want to negotiate an extension. We're going to give you a temporary extension through to the end of March so that we have ample time to negotiate. You're going to have to submit cost and pricing data unless an exception applies. And, and then, Your Honor, you go to FAR 52.215.20, which was addressed below, and it tells you what the offeror can do in lieu of submitting cost or pricing data. And it says in paragraph A, in lieu of submitting cost or pricing data, an officer, offerors may submit a written request for exception by submitting the information described in the following subparagraphs. And then subparagraph II refers to commercial items, the commercial item exception. For a commercial item exception, the officer, the offeror, excuse me, shall submit at a minimum information on prices at which the same item or similar items have been previously sold in the commercial market that is adequate for evaluating the reasonableness of the price of the acquisition. The burden is on the offeror to, to submit market information to show what the commercial market pays for, pays for these services. And that goes back to the definition of commercial item in FAR 2.101, which is the definition of commercial item, which is something that a commercial item is something where the price can be established by a catalog price or a market price, established in the ordinary course of trade between buyers and sellers free to bargain, and that can be substantiated through competition or sources independent of the offeror. Do you, do you see cost data from NTR to be an item that's distinguished from market data as to the market for services? Market data is data that can be used if it's a commercial item. If it's a commercial item, market data exists and can be submitted. And market data by the way. I don't think you get my question. They're saying they're submitting all this confidential data. Price data. Which is price, they say cost slash price data. Okay. But let's say the market is, is that services are, you know, $100 per hour is the market for, for services in Seattle, and I'm lucky enough, I only have to pay 50, because whatever. So I pay 50, I charge you, you know, 100 plus a markup, because I get the market plus some kind of markup, $110. The question is, is it any business of yours that I only pay 50, if I'm supposed to submit market data? If you are, if you in fact submit market data to satisfy the contracting officer that it's a commercial item, then as far as you provide that you do not go to the next item. You go to the next step and seek cost data. That first step was never done here. And in fact, Bechtel made the determination at DOE's strong urging, which by the way, I must say, in response to counsel, that it was, it was stated at least twice below by counsel for Northwest Technical Resources. If you look at SDR 80 and 82, they conceded below that DOE did direct Bechtel to obtain cost data. Ms. Smith, who was not a member of the board, was not a member of the board. She was not trial counsel, now says that that never happened. But if you look at SDR 80 and 82, trial counsel, Mr. Marston, specifically conceded that DOE required Bechtel to provide price data. He said, quote, the Department of Energy, as counsel for defendant, that was me, had already identified, was telling them, we want cost data. Now, what Mr. Marston said below is that what Bechtel should have said is gone back to DOE and said, oh, no, we can't, we can't get cost data, because our cost data is not available. Our contract doesn't allow us to do that. But this idea that Bechtel conceded that, or that there was no requirement from DOE that we obtain cost data is 180 degrees contrary to what NTR said below. Did you say that NTR did not ask for an exception in the negotiations for commercial item? They did not provide any of the information that was required under the bar. Even though you're saying your notice said if you want an exception, you provide it, and they didn't provide it. Instead, they gave you cost data when you requested it. They gave cost and pricing data, and then when the hang-up came over cost and pricing data. Did they give cost and pricing data? Yes. Because they are two different things on occasion. They were cost data supporting their prices. Okay? Okay. Cost information. Pricing data can be supported by cost data or market data. So I call it cost and pricing data because they were building up the costs, if you will, or they were purporting to do so. Anyway, the only time, the first time that NTR ever raised any issue about an exception under the commercial item was in one short note in a letter dated, a six-page letter dated March 28th, which was two days before they pulled the plug. And all they said was, we're entitled to an exception, period. No explanation, no basis, no nothing. We're entitled to an exception. I talked to a lawyer at that point and said you were entitled to an exception. I know I'm over time, but if I can... I think we have your argument well in mind, and there's a lot of briefing on this. Okay. So you can make one final wrap-up point. I would simply call your attention to the issue of the standard of review of Beckle's determination that this was a commercial item. General Condition 5 of the contract specifically lays out that it will not be disturbed but for a finding of fraud or bad faith, or if it's not supported by substantial evidence, which, of course, means evidence having some substance. And in the case law, even in the cases that NTR cited, the bid protest cases, the Shaba contracting case, which was one of the cases cited by NTR, was not supported by substantial evidence. As the Comptroller General noted, determining whether a particular service is a commercial item is a determination largely within the agency's discretion, which will not be disturbed by our office unless it is shown to be manifestly unreasonable. Thank you. Thank you. You have also used up all your time, but I'm going to give you a minute for rebuttal. I want to ask the Court again to look carefully at the briefing and to distinguish between cost or pricing data, because that's the FAR standard, and cost-price analysis. The significance of the fact that this information was being provided based on the misrepresentations that were being made about what it was going to be used for and who it was going to be given to in early March. The March 23rd letter was the very first letter, and this is set out in our reply brief, I think at page 9, was the very first time that they expressly said, we want cost or pricing data. Five days later, we said, you're not entitled to it. And the whole point of the misrepresentations that were made earlier about who the information was going to be given to and what it was going to be used for brings back into focus the consequence of the way in which this contract was being used. So I want to ask the Court again to look carefully at the fact that this information was being provided based on the misrepresentations that were being made about what it was going to be used for and who it was going to be given to in early March.
judges: Brunetti, McKeown, King